UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ARTHUR J. GALLAGHER & CO.**                               **CIVIL ACTION**

**VERSUS**                                                  **No. 08-185**

**CLAYTON L. BABCOCK, ET AL.**                              **SECTION I/5**


### ORDER AND REASONS

Before the Court is a motion *in limine* filed on behalf of defendants, Clayton L. Babcock, Marie G. Hardouin, Denise J. Alexi and Kristy Copeland, to exclude the expert witness report and testimony of plaintiff's expert, John Caraher ("Caraher"), with regard to damages.[1] Plaintiff, Arthur J. Gallagher & Co. ("Gallagher"), has filed an opposition.[2] For the following reasons, defendants' motion *in limine* is **DENIED**.

### *BACKGROUND*

The facts of the above-captioned case were set forth by the U.S. Fifth Circuit Court of Appeals in *Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384 (5th Cir. 2009) (unpublished):

> Gallagher is an insurance-brokerage firm. In November 2003, it purchased a Louisiana-based insurance-brokerage firm from Appellee Babcock. The purchase included, inter alia, his customer lists and accounts; and the purchase agreement included provisions essentially designed to protect confidential information and to prevent Babcock from competing with Gallagher for two years after the sale.
>
> In addition to the purchase agreement, Babcock signed an employment agreement with Gallagher; and he began working for Gallagher as a vice president. The employment agreement contained covenants similar to those in the purchase agreement,

---
[1] R. Doc. No. 123.
[2] R. Doc. No. 125.

1

>    including provisions preventing Babcock from competing with Gallagher for two years after termination of Babcock's employment.
>
>    When Gallagher purchased Babcock's business, Gallagher also hired the other Appellees: Copeland; and two former Babcock employees, Alexi and Hardouin.  They signed "executive agreements" at the beginning of their employment with Gallagher, containing similar restrictive covenants.

*Id.* at 385.

In December 2007 and early 2008, defendants left Gallagher to work for another insurance company. *Id.*  At the new company, defendants continued to service and handle many of the customers they had managed while employed at Gallagher.[3]  In response, Gallagher filed this lawsuit seeking, among other things, to recover the lost profits Gallagher suffered as a result of defendants' alleged breach of the restrictive covenants.

Defendants filed this motion *in limine* seeking to exclude the report and proposed testimony of Caraher, plaintiff's damages expert.  Defendants argue that Caraher's opinion is based on a methodology that conflicts with established Louisiana law for valuing loss of profit damages in claims involving the alleged breach of a restrictive covenant not to compete.[4]

### *LAW AND ANALYSIS*

**I.    STANDARD OF LAW**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S.Ct. 2786, 2794, 125 L.Ed.2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).  Rule 702 provides:

>    If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

---
[3] R. Doc. No. 123-1, p.3.
[4] *Id.* at p.4.

> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238, 249-50 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.' " (citing *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. at 1176, 143 L.Ed.2d at 253)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000). The Court notes that when a judge sits

as the trier of fact, rather than a jury, the *Daubert* limitations are relaxed.  *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).  " 'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.' " *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed.R.Evid. 702 advisory committee's note).

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998).  To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology.  Rather, some objective, independent validation of the expert's methodology is required. *Id.*  Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).  The Fifth Circuit has added that, in

4

> determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.' " *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## II.   DISCUSSION

Under Louisiana law, "[d]amages [for breach of contract] are measured by the loss sustained by the obligee and the profit of which he has been deprived." La. Civ. Code Ann. art 1995 (1985). "As a general rule damages for loss of profits may not be based on speculation and conjecture, however, such damages need be proven only within reasonable certainty. Broad latitude is given in proving lost profits because this element of damages is often difficult to prove and mathematical certainty or precision is not required." *Cox Communications v. Tommy Bowman Roofing*, LLC, 929 So.2d 161, 166-67 (La. Ct. App. 2006); *see also* La. Civ. Code Ann. art 1999 (1985) ("When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages."). "A commonly accepted method of proving lost profits is by calculating profits for similar sales during other periods of time and using such calculations as a basis for estimating lost profits for the period in question." *Lavigne v. J. Hofert Co.*, 431 So.2d 74, 77 (La.App. 1st Cir.1983).

Defendants argue that Caraher's report and testimony should be excluded because "Caraher's estimate of damages, however, is not based on the actual profit Gallagher lost, but on Gallagher's expected increase in business." Defendants mischaracterize Caraher's expert report and the analysis contained within. What Caraher actually does is begin with Gallagher's profits associated with the accounts purchased and serviced by defendants (the "Babcock accounts") in

5

the three years preceding defendants' departure.[5]  Then, Caraher projects what he believes the profits Gallagher would have made on the Babcock accounts had Gallagher, and not defendants, continued to service the Babcock accounts in the years following defendants' departure.  In making such projections, Caraher used Gallagher's client retention rates to adjust the figures.  Instead of an increase in business, the numbers actually decrease in each successive year, reflecting the expectation that Gallagher would not be able to perpetually retain every client in the Babcock accounts.

The fact that Caraher must use projections of lost profits to prove the amount of damages does not render the calculations unreliable.  *See Lavigne*, 431 So.2d at 77; *see also Schwartz v. U. S. Fire Ins. Co.*, 375 So.2d 718, 720 (La. Ct. App. 1979) ("Our settled law is that loss of future profits or the incurring of future damages are recoverable when it is proven such a loss or damage actually has been sustained, even though the amount thereof cannot be established with mathematical certainty.")  They are based on Gallagher's actual financial information for the years preceding Babcock's departure and Caraher's asserted expertise in Gallagher's retention rates.  Since Caraher's calculations pass the reliability prong of *Daubert* and such projections would assist a trier of fact in determining Gallagher's lost profits, the Court finds Caraher's report and testimony admissible under Rule 702.[6]

Defendants also argue that since the non-competition provisions of the agreements expired two years after defendants left Gallagher, Caraher's testimony is inadmissible as to the years beyond the first two.[7]  The Court sees no reason at this point to limit plaintiff's recovery to the two years of the non-competition provision.  Should Gallagher prove that but for defendants'

---

[5] R. Doc. No. 123-2.

[6] Defendants assert that their new employer's profits on the Babcock accounts would provide a more accurate determination of Gallagher's lost profits.  Such argument goes to the weight, rather than the admissibility, of Caraher's report and testimony.

[7] Defendants acknowledge that the courts have yet to determine a specific time limit on awarding lost profit damages.

violation of the contract Gallagher would have continued to service a diminishing proportion of the Babcock accounts for the next ten or fifteen years, the Court cannot now state that Gallagher would not be entitled to lost profits for those years.

For the foregoing reasons,

**IT IS ORDERED** that defendant's motion *in limine* to exclude the report and testimony of plaintiff's expert witness is **DENIED.**

New Orleans, Louisiana, January 7, 2011.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**