UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARTHUR J. GALLAGHER & COMPANY** | **CIVIL ACTION** |
| | **No. 08-185 c/w 08-290** |
| **VERSUS** | **REF: No. 08-185** |
| **CLAYTON BABCOCK, ET AL** | **SECTION I** |

### ORDER & REASONS

Before the Court is a motion[1] for partial summary judgment filed by plaintiff, Arthur J. Gallagher & Company ("Gallagher"), and a motion[2] for summary judgment filed by defendants, Clayton Babcock ("Babcock"), Denise J. Alexi ("Alexi"), Marie G. Hardouin ("Hardouin"), and Kristy Copeland ("Copeland"). For the following reasons, the motions for partial summary judgment and summary judgment are **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

The facts of the above-captioned case were set forth by the U.S. Fifth Circuit Court of Appeals in *Arthur J. Gallagher & Co. v. Babcock*, 339 F. App'x 384 (5th Cir. 2009) (unpublished):

> Gallagher is an insurance-brokerage firm. In November 2003, it purchased a Louisiana-based insurance-brokerage firm from Appellee Babcock. The purchase included, *inter alia*, his customer lists and accounts; and the purchase agreement included provisions essentially designed to protect confidential information and to prevent Babcock from competing with Gallagher for two years after

---

[1] R. Doc. No. 129.

[2] R. Doc. No. 133.

1

the sale.

In addition to the purchase agreement, Babcock signed an employment agreement with Gallagher; and he began working for Gallagher as a vice president. The employment agreement contained covenants similar to those in the purchase agreement, including provisions preventing Babcock from competing with Gallagher for two years after termination of Babcock's employment.

When Gallagher purchased Babcock's business, Gallagher also hired the other Appellees: Copeland; and two former Babcock employees, Alexi and Hardouin. They signed "executive agreements" at the beginning of their employment with Gallagher, containing similar restrictive covenants.

In December 2007 and early 2008, Appellees left Gallagher to work for another insurance company. The litigation giving rise to the instant interlocutory appeal essentially concerns whether any of the above-referenced agreements have been violated.

In conjunction with this litigation, a temporary restraining order (TRO) pertaining to the agreements was granted on 8 January 2008; and, a preliminary-injunction hearing was held on 31 January. The requested preliminary injunction required the district court to address four types of provisions: non-competition, non-solicitation-of-customers, confidentiality, and non-solicitation-of-employees.

As noted, Appellees did not contest in district court the validity of the confidentiality and non-solicitation-of-employees provisions. (On the other hand, in the underlying litigation, they do contest whether these provisions have been violated.) Because the January 2008 preliminary-injunction hearing was essentially limited to deciding validity *vel non*, however, the district court's subsequent ruling focused on the only two provisions for which validity was challenged: non-competition and non-solicitation-of-customers.

The order following the January 2008 preliminary-injunction hearing was not issued until June 2008. *Gallagher v. Babcock*, No. 2:08-CV-185 (E.D. La. 4 June 2008) (unpublished order and reasons). In that order, the district court did not expressly decide the requested preliminary injunction. Instead, it held: the non-competition and non-solicitation-of-customers provisions are not enforceable, as a matter of law, because they are geographically overbroad; the uncontested confidentiality and non-solicitation-of-employees provisions are valid; and the TRO is

>
> to remain in effect with respect to the valid provisions until the court decides the requested preliminary injunction.

*Id.* at 385-86.

Gallagher filed an interlocutory appeal on June 11, 2008 challenging the district court's invalidation, as a matter of law, of the non-competition and non-solicitation-of-customers provisions.[3] The Fifth Circuit held that the district court erred in holding that the non-competition and non-solicitation-of-customers provisions were geographically overbroad *per se* and it directed the district court, on remand, to conduct a factual inquiry to determine whether Gallagher carries on a like business within the specified parishes. *Id.* at 387-88. The Fifth Circuit held that "if any provisions are found to be unenforceable, a severability analysis should be performed." *Id.* at 388.[4]

In its present motion for partial summary judgment, Gallagher contends that the non-competition and non-solicitation-of-customers provisions are not geographically overbroad because Gallagher conducts business in all 64 parishes. In the alternative, if the Court finds the provisions overbroad, Gallagher contends that the Court should reform the provisions to render them enforceable. Defendants contend in their motion for summary judgment that the non-

---

[3]On June 17, 2008 the above-captioned action was transferred to this section of Court. At the time of transfer, this Court was already presiding over a related action involving Gallagher and Babcock. The Court subsequently consolidated the two actions and stayed and administratively closed the above-captioned cases to await the Fifth Circuit's ruling on Gallagher's interlocutory appeal. *Id.* at 386.

[4]The Fifth Circuit declined to decide other issues raised by the parties on appeal, including "whether the language of the agreements is adequate to create valid non-competition provisions; and whether Copeland's agreement was rendered unenforceable by a claimed missing attachment," on the ground that these issues should be first addressed by the district court on remand. *Id*. at 388-89.
  The Court addresses the creation of valid non-competition provisions *infra*, but with respect to the missing attachment, the Court finds that Copeland's agreement is nonetheless enforceable because Louisiana law allows incorporation of documents into a contract by reference and it deems parties to be aware of the contents of the documents they sign, including items referenced but not attached to those documents. *See e.g.*, *Mount Calvary Baptist Church v. Williams Constr. Co.*, No. 06-1674, 2007 WL 2193771 (La. Ct. App. 2007) (holding that an addendum to a contract that was clearly referenced in the contract but unattached was binding on the parties).

competition and non-solicitation-of-customers provisions are overbroad, invalid and unenforceable, and that the provisions are not proper for reformation, as a matter of Louisiana law.

## LAW & ANALYSIS

### I. Standard of Law

*A. Summary Judgment*

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must carry this burden as to each essential element on which it bears the burden of proof. *Schaefer v. Gulf Coast Regional Blood Center*, 10 F.3d 327, 330 (5th Cir. 1994). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by

only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

    *B. Contract Interpretation*

"Under Louisiana law, the interpretation of an unambiguous contract is an issue of law for the court." *Amoco Prod. Co. v. Texas Meridian Resources Exploration Inc.,* 180 F.3d 664, 668 (5th Cir. 1999) (citing *Texas Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)).  "The interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code. art. 2045.  " The words of a contract are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007).

"When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.  "A contract provision is not ambiguous where only one of two competing interpretations is reasonable or merely because one party can create a dispute in hindsight." *Amoco Prod.*, 180 F.3d at 668-69 (quoting *Tx. Eastern Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 741 (5th Cir. 1998)) (internal quotation marks omitted). "In the context of

contract interpretation, only when there is a choice of reasonable interpretations of the contract is there a material fact issue concerning the parties' intent that would preclude summary judgment." *Id.* at 669.

*C. Non-Competition Agreements*

"Louisiana restricts, and narrowly construes, non-competition agreements and similar types of restrictive covenants." *Gallagher*, 339 F. App'x at 387 (citing *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 808 So.2d 294, 298 (La. 2001) (noting that Louisiana has a "strong public policy restricting these types of agreements")). Provisions such as the non-competition and non-solicitation-of-costumers provisions at issue in this case are invalid unless they satisfy Louisiana Revised Statute § 23:921(C). *Id.* Louisiana Revised Statute § 23:921(C), states, in pertinent part:

> Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer *within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein*, not to exceed a period of two years from termination of employment.

La. R.S. § 23:921(C) (emphasis added).

**II. Analysis**

*A. Non-Competition Agreements*

Section 7(f) of the purchase agreement[5] between Babcock and Gallagher is entitled "Non-Competition" and states:

---

[5]The purchase agreement refers to Arthur J. Gallagher & Co. as "Gallagher," it refers to Gallagher Benefit Services, Inc., as "Subsidiary," it refers to Babcock Consulting, Inc. as "Seller," and it refers to Clayton L Babcock as "Stockholder." R. Doc. No. 133-3, p.1.

> Non-Competition. For a period of two years after the Closing Date, Seller and the Stockholder shall not, directly or indirectly, compete in any way with the business of Seller to be transferred to Subsidiary pursuant to this Agreement. For the purposes of this paragraph, the term "compete in any way with the business of Seller" shall mean the entering into or attempting to enter into any business similar to that carried on by Seller or by Gallagher or Subsidiary. For a period of two years after the date hereof or after the date of the termination of his employment with Gallagher or any of its subsidiaries whichever date occurs latest, the Stockholder will not, *directly or indirectly, solicit, serve, sell to, divert, receive or otherwise handle* insurance-related business with any individual, partnership, corporation or association that (a) is, or within the last two (2) years was, a client or customer of Seller or (b) is a prospective client or customer of Seller in those parishes and municipalities designated on Addendum II attached hereto. . .[6]

Defendants contend that the first two sentences of section 7(f) of the purchase agreement contain the only non-competition agreement between plaintiff and defendants and that such provision expired two years after the November 21, 2003 sale of Babcock's business to Gallagher. Gallagher does not contest that the non-competition agreement contained in the first two sentences has expired and avers that it does not seek to enforce that provision.

Defendants further argue that the third sentence of section 7(f) of the purchase agreement does not contain a non-competition provision, but instead contains a second restrictive covenant prohibiting solicitation, which is alleged to be overly broad. Defendants contend that because the third sentence does not contain "non-competition language" it must be construed only as a non-solicitation provision. Defendants also contend that certain provisions in the employment agreement signed by Babcock and in the executive agreements signed by Copeland, Alexi, and Hardouin are non-solicitation provisions and not non-competition provisions. As non-

---

[6]R. Doc. No. 133-3, pp.22-23 (emphasis added).

solicitation provisions, defendants argue that the language following the word "solicit" is overly broad and should be stricken in their entirety.

Section 8 of the employment agreement is entitled "Protection of Corporation's Business" and states, in pertinent part:

> . . . [T]he Executive understands and agrees that for a period of two (2) years following the termination of this employment for any reason whatsoever, he will not, *directly or indirectly, solicit, place, market, accept, aid, counsel or consult* in the renewal, discontinuance, or replacement of any insurance (including self-insurance) by, or *handle* self-insurance programs, insurance claims, risk management services or other insurance administrative or service functions for, any Corporation account for which he performed any of the foregoing functions during the two year period immediately preceding such termination in those parishes and municipalities designated on Addendum II . . .[7]

The executive agreements signed by Alexi, Hardouin and Copeland state:

> . . . the Executive understands and agrees that for a period of two years following the termination of his employment for any reason whatsoever, he will not (I) *directly or indirectly solicit, place, market, accept, aid, counsel or consult* in the renewal, discontinuance or replacement of any insurance or reinsurance by, or *handle* self-insurance programs, insurance claims or other insurance administrative functions ("insurance services") for, any Company account or actively solicited prospective accounts for which he performed any of the foregoing functions during the two-year period immediately preceding such termination or (ii) *provide any employee benefit brokerage, consulting, or administrative services* in the area of group insurance, defined benefit and defined contribution pension plans, individual life, disability and capital accumulation products, and all other employee benefit areas ("benefit services") the Company is involved with, for any Company account or actively solicited prospective accounts for which he performed any of the foregoing functions . . .[8]

Parties are not required to use "magic words" when drafting non-competition agreements. *See Team Environmental Services, Inc. v. Addison*, 2 F.3d 124, 127 (5th Cir. 1993); *Gearheard v. De Puy Orthopaedics, Inc.*, 1999 WL 638582 at *5 (E.D. La. Aug. 19, 1999) (Clement, J.). As

---

[7] R. Doc. No. 133-2, p.51 (emphasis added).

[8] R. Doc. No. 133-1, pp.7-8 (emphasis added).

8

plaintiff notes, Louisiana Revised Statute 23:921(C) does not use the words "compete" or "competition." Nor does the statutory language require that parties use such terms to create a binding non-competition agreement. Courts applying Louisiana law have recognized certain provisions as non-competition provisions even when such provisions did not use the words "compete" or "competition" and contained similar or comparable language to that used in the provisions at issue. *See, e.g., Simpson v. Bruno*, 1990 WL 161077 at *2 (E.D. La. Oct. 12, 1990); *H20 Hair, Inc. v. Marquette,* 960 So. 2d 250, 257 (La. Ct. App. 2007); *Millet v. Crump*, 687 So. 2d 132, 134 (La. Ct. App. 1996); *Allied Bruce Terminix Co.*, *Inc. v. Guillory*, 649 So. 2d 652, 652-53 (La. Ct. App. 1994).

Furthermore, with respect to the purchase agreement, the Court observes that section 7(f) of the purchase agreement is entitled "Non-Competition" and that the presence of two separate non-competition provisions in the purchase agreement is unsurprising considering that La. R.S. § 23:921 separately addresses non-competition and non-solicitation in the context of the sale of a business and in the context of employment. Specifically, La. R.S. § 23:921(B)[9] permits a purchaser of a business to prohibit the seller of the business from competing for two years from the date of the sale, whereas La. R.S. § 23:921(C) permits an employer to prohibit its employee from competing for two years after the employee's termination date.

Because Babcock agreed in the purchase agreement both to sell his business and to

---

[9]La. R.S. 23:921(B) states:
>Any person, including a corporation and the individual shareholders of such corporation, who sells the goodwill of a business may agree with the buyer that the seller or other interested party in the transaction, will refrain from carrying on or engaging in a business being sold or from soliciting customers of the business being sold within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein, not to exceed a period of two years from the date of sale.

accept employment with Gallagher, the purchase agreement sensibly included two non-competition provisions, one for each situation contemplated by La. R.S. §§ 23:921(B) and (C). The first more restrictive provision applied for two years after the execution of the purchase agreement and prohibits Babcock from competing "in anyway with the business" that Babcock sold to Gallagher.  The second less restrictive provision applied until the latest of two years after the execution of the purchase agreement or two years after Babcock terminated his employment with Gallagher and it states that Babcock may not "*directly or indirectly, solicit, serve, sell to, divert, receive or otherwise handle* insurance-related business with any individual, partnership, corporation or association that (a) is, or within the last two (2) years was, a client or customer of Seller or (b) is a prospective client or customer of Seller in those parishes and municipalities designated on Addendum II attached hereto. . . ."  Defendants cite no legal authority in support of their argument that such provision prohibits solicitation, but not competition, in the ways specifically stated by the agreement.

Similarly, with respect to the employment and executive agreements, defendants fail to explain why a contractual provision stating that defendants may not "*accept, aid, counsel or consult* in the renewal, discontinuance or replacement of any insurance or reinsurance" or "*handle* self-insurance programs, insurance claims or other insurance administrative functions" should not be construed as a non-competition agreement.  If defendants were merely prohibited from soliciting customers, then defendants would, in theory, be able to accept, aid, counsel, and consult in the renewal, discontinuance or replacement of any insurance or reinsurance of unsolicited Gallagher customers and handle business from those Gallagher customers who were not solicited.  Gallagher expressed its desire to prevent that by including the specific terms,

"accept, aid, counsel or consult" and "handle."  Construing the foregoing provisions as merely prohibiting solicitation-of-customers would disregard the clear, unambiguous language of the provisions. *See, e.g., Simpson*, 1990 WL 161077 at *2.

*B. Geographic Scope*

The provisions at issue in this case prohibit the specified conduct in each of Louisiana's 64 parishes.  Consistent with Louisiana Revised Statute 23:921(C), "these provisions do specify the specific parishes within which competition and solicitation are prohibited; each lists all of Louisiana's parishes by name." *Gallagher*, 339 F. App'x at 387.

Plaintiff and defendants dispute whether the non-competition and non-solicitation-of-customers provisions are geographically overbroad.  As the Fifth Circuit explained, in determining whether such provisions are geographically overboard, this Court must consider "evidence regarding the nature and extent of Gallagher's business" and conduct "a factual inquiry . . . to determine whether Gallagher 'carries on a like business [within the specified parishes].'" *Gallagher*, 339 F. App'x at 387 (quoting La. Rev. Stat. 23:921(C); citing *Vartech Sys., Inc. v. Hayden*, 951 So.2d 247, 257-58 & n.12 (La. Ct. App. 2006)).  "It is certainly possible for a company to conduct a like business in all of Louisiana's parishes; and, if that were the case, the plain language of § 23:921(C) provides for the protection of that company's interests." *Id.* at 388; *see also Moores Pump & Supply, Inc. v. Laneaux*, 727 So. 2d 695, 698 (La. Ct. App. 1999) (holding that a non-competition agreement covering 43 of Louisiana's 64 parishes was not geographically overbroad because the employer solicited business in each of the 43 named parishes); *Vartech*, 727 So. 2d at 258 ("The listing of all 64 parishes does not automatically render the specification overly broad.").

Gallagher contends that the disputed provisions are not geographically overbroad because Gallagher, through its subsidiary Arthur Gallagher Risk Management Services, Inc. ("RMSI"), serviced clients in all 64 parishes as of January, 2008.[10]  Gallagher provides the Court with an affidavit from Numa J. "Bumpy" Triche, area president for RMSI, which states:

> As of January 2008, Arthur J. Gallagher Risk Management Services, Inc. provided *insurance-related services* to, among others, public entities and clients in the maritime and construction industries, including assisting those public entities and clients to obtain and administer property and casualty insurance policies and obtain bonds. *Through this work, Arthur J. Gallagher Risk Management Services, Inc. did business in all 64 parishes in Louisiana.*[11]

Defendants counter that because their work at Gallagher extended only life and health insurance services in nine Louisiana parishes,[12] Gallagher only "carries on a like business" wherever it engaged in life and health insurance services.

The parties do not dispute that Gallagher did not engage in life and health insurance services in all 64 parishes.  Rather, the issue in dispute is whether the property and casualty insurance services provided by RMSI and the life and health insurance services performed by defendants while at Gallagher are "like business[es]" for the purposes of La. R.S. § 23:291(C).

Louisiana courts have not clearly articulated a standard for determining whether two businesses are similar for purposes of La. R.S. § 23:921(C).  However, courts have indicated that activities subject to differing descriptions or definitions are dissimilar. *See e.g.*, *Ticheli v. John H. Carter Co., Inc.*, 996 So.2d 437, 441 (La. Ct. App. 2008) ("the business of selling the various

---

[10]R. Doc. No. 129-1, p.13.

[11]R. Doc. No. 129-2, p.33 (emphasis added).

[12]An affidavit by Babcock states that while employed by Gallagher, he handled accounts in nine Louisiana parishes, namely Jefferson, East Baton Rouge, St. Mary's, Iberville, Terrebonne, LaFourche, Orleans, Beauregard, and Rapides Parishes. R. Doc. No. 129-2, p.35.  Affidavits by Alexi and Hardouin confirm that, while employed by Gallagher, they serviced clients in the same nine parishes. *Id.* at pp.39,42.

types of industrial valves and instrumentation is not subject to another description or definition."); *Baton Rouge Computer Sales, Inc. v. Miller-Conrad*, 767 So.2d 763, 765 (La. Ct. App. 2000) ("[w]hile the types of computer systems sold may be diverse, the business of selling them is not an activity subject to various descriptions or definitions."). This is precisely the situation here.

The State of Louisiana makes a clear distinction between brokers of various types of insurance. Louisiana defines each line of insurance, such as property, casualty, life, and health, differently and maintains different licensing requirements for professionals working in each line.[13] La. R.S. §§ 22:1545 and 22:1547. A broker licensed to sell one line of insurance may not sell any other line of insurance without first becoming duly licensed as to that line. La. R.S. § 22:1543.

None of the defendants are licensed to sell or service property and casualty insurance products and none of the defendants ever sold or serviced property or casualty insurance products.[14] Defendants only engaged in life and health insurance services while at Gallagher. Based on the differing descriptions and definitions set forth by the State of Louisiana, the Court finds that the casualty and property insurance services provided by RMSI and the life and health insurance services performed by defendants while at Gallagher are not "like business[es]" for the purposes of La. R.S. § 23:291(C). Accordingly, the provisions are geographically overbroad for including parishes in which Gallagher does not provide life and health insurance services.

*C. Reformation*

---

[13]R. Doc. No. 133-2, p. 41.

[14]Id.

13

Having found the provisions geographically overbroad, the next issue is whether the Court should reform the provisions to render them enforceable. All of the agreements contain severability clauses. The purchase agreement states:

> To the extent that the covenants set forth in this Section 7(f) or any word, phrase, clause, or sentence thereof (including any geographical or temporal restrictions contained in such covenants) shall be found to be illegal or unenforceable for any reason, such word, clause, phrase or sentence shall be modified or deleted in such a manner so as to afford Gallagher and Subsidiary the fullest protection commensurate with making the covenant, as modified, legal and enforceable under applicable laws, and the balance of the covenants, or parts thereof, shall not be affected thereby, the balance being construed as severable and independent.[15]

Babcock's employment agreement states:

> To the extent that the terms set forth in this Agreement or any word, phrase, clause or sentence is found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such manner so as to afford the Corporation the fullest protection commensurate with making this Agreement, as modified, legal and enforceable under applicable laws, and the balance of this Agreement shall not be affected thereby, the balance being construed as severable and independent.[16]

The executive agreements signed by Alexi, Hardouin and Copeland state:

> The provisions of this Agreement are intended to be interpreted and construed in a manner which makes such provisions valid, legal and enforceable. In the event any provision of this Agreement is found to be partially or wholly invalid, illegal or unenforceable, such provision shall be modified or restricted to the extent and in the manner necessary to render such provision valid, legal and enforceable. It is expressly understood and agreed between the parties that this modification or restriction may be accomplished by mutual accord between the parties or, alternatively, by disposition of a court of law. If such provision cannot under any circumstances be

---

[15] R. Doc. No. 133-2, pp.23-24.

[16] *Id.* at p.57.

> so modified or restricted, it shall be excised from this Agreement without affecting the validity, legality or enforceability of any remaining provisions.[17]

Where non-competition agreements have specified parishes and/or municipalities and include a severability clause, Louisiana courts, including the Louisiana Supreme Court, have reformed overbroad geographical restrictions by striking and excising the offending portions of the provisions. *See e.g.*, *AMCOM of Louisiana, Inc. v. Battson*, 666 So.2d 1227 (La. Ct. App. 1996), *rev'd*, 670 So.2d 1223 (La. 1996) (reinstating the trial court's judgment, which had reformed the overbroad non-competition agreement by striking that portion which prohibited competition within a 75-mile radius and leaving in effect the remainder that prohibited competition in Shreveport and Bossier City, and Caddo and Bossier Parishes); *Moreno and Assocs. v. Black*, 741 So.2d 91, 93 (La. Ct. App. 1999) (reforming the overbroad restrictive covenant by deleting all geographical references except the specified parishes of Lafayette and Iberia); *Dixie Parking Serv., Inc. v. Hargrove*, 691 So.2d 1316, 1320-21 (La. Ct. App. 1997) (affirming trial court's reformation of an overbroad non-competition agreement by deleting nine extraneous parishes listed in the exhibit and leaving only the two parishes in which the plaintiff operated).

Notably, in *Arthur J. Gallagher Risk Mgmt. Servs., Inc. v. Todd*, 2010 WL 2179753 at *3 (La. Ct. App. June 2, 2010), the court was presented with a non-competition agreement that contained wording nearly identical to the wording of the provisions at issue in this case. The only difference is in the geographical restrictions listed: there, defendant was prohibited from competing in 15 parishes and the states of Texas and Mississippi. The trial court found the

---

[17]*Id.* at pp. 95, 109-10, 118.

geographical restriction overbroad and, therefore, unenforceable. The appellate court agreed with the appellant:

> Gallagher argues that the trial court erred in not applying the Section 11(d) language to reform Section 8 so that it is a legal contract pursuant to La. R.S. 23:921. We agree. The supreme court specifically held that non-competition agreements can be reformed to fit within the statute if the employment contract contains a severability clause. By striking the words "and the States of Texas and Mississippi," the contract is reformed so that it is not overly broad as to geographic limits.

In the instant case, the Court is presented with a similarly geographically overbroad non-competition agreements. Since it is uncontested that Gallagher carried on a "like business" in nine parishes,[18] the Court finds that reformation of the non-competition agreements is proper.[19]

## CONCLUSION

**IT IS ORDERED** that plaintiff's motion[20] for partial summary judgment is **DENIED IN PART** in that the agreements are not enforceable as written and **GRANTED IN PART** in that reformation of the agreements is proper.

**IT IS FURTHER ORDERED** that defendants' motion[21] for summary judgment is

---

[18] R. Doc. No. 118. In its motion, Gallagher mentions that Gallagher Benefit Services, Inc. ("BSI"), the division of Gallagher focused on employment benefit insurance, performs insurance-related business in 32 parishes. R. Doc. No. 129-1, p.13. Gallagher has not provided any further elucidation with respect to the nature of the "insurance-related business" conducted in those 32 parishes and whether employment benefits services were provided. Since plaintiff seeks reformation of the agreements to render them enforceable only in the nine parishes in which the defendants conducted business while with Gallagher, the court presumes BSI only provided employment benefit services in those nine parishes.

[19] In their reply to plaintiff's motion, defendants argue for the first time that since BSI, not Gallagher, was their payroll employer, Gallagher lacks the right to enforce the restrictive covenants. Not only do defendants cite no caselaw in support of their contention, but defendants seemingly misconstrue plaintiff's cause of action. Gallagher is claiming breach of contract and, as a party to all the contracts, it has standing to enforce the provisions of those contracts, including the restrictive covenants.

[20] R. Doc. No. 129.

[21] R. Doc. No. 133.

**GRANTED IN PART** in that the agreements are overbroad and **DENIED IN PART** in that the restrictive covenants are proper for reformation.

**IT IS FURTHER ORDERED** that all parishes names except for "Jefferson Parish," "East Baton Rouge Parish," "St. Mary's Parish," "Iberville Parish," "Terrebonne Parish," "LaFourche Parish," "Orleans Parish," "Beauregard Parish," and "Rapides Parish" are stricken from Addendum II attached to the purchase agreement, employment agreement and executive agreements.

New Orleans, Louisiana, January 7, 2011.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**